UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SERGIO RIVERON CRUZ,

     *Petitioner*,

v.                          Case No. 3:26-cv-1169-JEP-LLL

U.S. ATTORNEY GENERAL, et al.,

     *Respondents*.

_____/

## ORDER

Petitioner, a detainee of the United States Immigration and Customs Enforcement ("ICE"), filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2241 on May 6, 2026. (Doc. 1).[1] Petitioner argues that his prolonged detention violates the Fifth Amendment's Due Process Clause as the Supreme

---

[1] At the time Petitioner filed this case, he was housed at Baker Correctional Institute in Sanderson, Florida. (Doc. 1 at 1). According to ICE's website, he is currently housed at a detention facility in California. *See* Online Detainee Locator System, ICE, available at https://locator.ice.gov/odls/#/search (last visited July 1, 2026). Because Petitioner was detained within the Middle District of Florida when he filed this case, this Court retains jurisdiction despite his transfer. *See Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) ("[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."); *see, e.g.*, *Elcock v. Streiff*, 554 F. Supp. 2d 1279, 1282 (S.D. Ala. 2008) ("[J]urisdiction attaches upon the initial filing of the § 2241 petition and will not be destroyed by a petitioner's subsequent Government-effectuated transfer and accompanying change in physical custodian. . . . [I]f a § 2241 petition must be transferred every time the petitioner is transferred, it is doubtful that the case would ever be decided.").

Court construed it in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*See* Doc. 1 at 6–7). He asks the Court to order his release. (*Id.* at 7).

The Federal Respondents filed a response in opposition to the petition. (Doc. 5). According to the Federal Respondents, Petitioner has impeded his removal and thus, the Court should toll the presumptively reasonable time period. (*Id.* at 9–10). Further, the Federal Respondents argue that Petitioner has not demonstrated that his removal is not reasonably foreseeable. (*Id.* at 10–11). The Warden filed a motion to dismiss, arguing he is not a proper respondent in this case. (Doc. 6). Petitioner filed a reply. (Doc. 7). Upon review of the parties' filings, the Court finds that the petition must be granted.

## I.

Petitioner, a citizen of Cuba, entered the United States on September 11, 1995. (Doc. 5 at 1). Following several criminal convictions between 1998 and 2006, an immigration judge ordered Petitioner removed on October 17, 2007. (*Id.* at 2-3). On November 3, 2025, ICE took Petitioner into custody. (*Id.* at 3).

On May 22, 2026, a deportation officer authored a declaration explaining ICE's position with respect to Petitioner's immigration history and likelihood of removal. (Doc. 5-1). He explains that on September 11, 1995, Petitioner "was paroled into the United States in the public interest." (*Id.* at 1). He then states:

"On September 22, 1995, he was released on an Order of Supervision.[2] On July 13, 2007, his Order of Supervision was revoked, then again on August 1, 1995,[3] he was again served as a 'No Bond.'" (*Id.*). He details Petitioner's criminal history and then advises that an immigration judge ordered Petitioner removed on October 17, 2007. (*Id.* at 2). He explains that Petitioner "was enrolled in CART on February 2, 2023, . . . with a reporting frequency of every 1 Year(s) due to no [significant likelihood of removal in the reasonably foreseeable future]." (*Id.*). Apparently due to an active warrant and possible non-compliance, Petitioner's "check-in frequency was modified to every 6 Month(s)." (*Id.*).  The deportation officer continues:

> [On] November 3, 2025, [Petitioner was a]rrested by FUG OPS. Considering his criminal history and the necessity to protect public safety and private property, ICE revoked his Order of Supervision (OSUP) and will seek to remove him to a third country or alternative country.

> As of December 16, 2025, per IOD-Cuba this case has been denied by the Government of Cuba, ERO should continue efforts to remove to a safe 3rd country (Mexico). The action was completed using NDM's Enterprise System Automation Tool (ESAT).

---

[2] The screenshot of Petitioner's ICE detention history reflects that he was released on an order of recognizance on September 22, 1995. (Doc. 5-5).

[3] This date appears to be incorrect because Petitioner did not enter the United States until September 11, 1995.

> On January 8, 2026, [Petitioner] refused to sign I-205, I-294, I-229(a), 3rd Country Removal, forms uploaded into Documents tab.[4]

> On March 18, 2026, ERO issued a decision to serve a form I-229(a) and Instruction Sheet to Petitioner about Petitioner's obligations to cooperate with immigration authorities. He signed I-229a but will not accept a Third Country removal – refused.

> On April 6, 2026, DO Diaz completed Post-Order Custody Review (POCR) and recommended continued detention until he can be returned to Cuba or an alternative country for removal.

> On May 12, 2026, Petitioner filed a Writ of Habeas Corpus.

> Based on the aforementioned and continued engagement and/or removal efforts, there is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future.

(*Id.* at 3). The Federal Respondents submitted the following documentary evidence in support of their position: a "Notice of Revocation of Release" dated November 3, 2025 (Doc. 5-2); an "Alien Informal Interview Upon Revocation of Order of Supervision" dated May 23, 2026 (Doc. 5-3); and a "Notice of Removal" dated January 6, 2026 (Doc. 5-4). They also submitted a screenshot of Petitioner's ICE detention history. (Doc. 5-5).

## II.

Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021)

---

[4] The only form in the record that Petitioner "refused to sign" is dated January 6, 2026. (Doc. 5-4).

("§ 1231 explains what to do if the alien is ordered removed."); *see also Deshati v. Noem*, No. 25-cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025) ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to section 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2)(A). "The 90-day removal period shall be extended, and the noncitizen may remain in detention, if the noncitizen (1) 'fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure' *or* (2) 'conspires or acts to prevent the alien's removal.'" *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(C)).

The Supreme Court in *Zadvydas* held that indefinite detention of aliens after a final order of removal raises serious constitutional concerns. 533 U.S. at 690–99. Once an order of removal is final, the government may continue to detain an alien only for a reasonable amount of time. *See id.* at 699–701. The reasonableness of the detention is to be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence *at the moment of removal*." *Id.* at 699 (emphasis added). The Supreme Court held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* at 700–01. "Although not expressly stated, the

5

Supreme Court appears to view the six-month period to include the 90-day removal period [from section 1231(a)(1)(A)] plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 1052 (quoting *Zadvydas*, 533 U.S. at 701). Thus, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Notably, *Zadvydas* claims asserted prior to the presumptively reasonable six-month period are deemed unripe and subject to dismissal without prejudice. *See Akinwale*, 287 F.3d at 1052; *see also Ramos Alvarez v. U.S. Immigr. & Customs Enf't*, No. 3:25-cv-1038, 2025 WL 2591830, at *1 (M.D. Fla. Sept. 8, 2025).

### III.

Here, Petitioner was taken into ICE custody on November 3, 2025, and he filed this case on May 6, 2026, which was 184 days after his detention began.

6

Although Petitioner had been in ICE custody longer than 180 days when this case was filed, the Federal Respondents ask the Court to toll the six-month period because "Petitioner has refused to sign the Notice of Removal required to begin the process of staging Petitioner for removal to Mexico . . . and other 3rd country removal documents." (Doc. 5 at 9–10).

Section 1231(a)(1)(C) permits the "removal period" to be extended "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). Courts have applied § 1231(a)(1)(C) differently when addressing a *Zadvydas* claim:

> Many courts conduct an analysis using the burden-shifting framework from *Zadvydas*, considering an alien's failure to cooperate in determining whether the alien can show "good cause" to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Other courts contend that an alien's failure to cooperate precludes an analysis under *Zadvydas* altogether. Finally, some courts find an alien's failure to cooperate or filing of litigation equitably tolls, possibly indefinitely, the six-month removal period. In fact, a couple of courts covered both bases finding obstruction tolled the removal period, and in the alternative, the alien did not meet the *Zadvydas* standard.

*Glushchenko v. United States Dep't of Homeland Sec.*, 566 F. Supp. 3d 693, 705–06 (W.D. Tex. 2021) (footnotes omitted). In *Akinwale*, the Eleventh Circuit recognized that the six-month period may be tolled if the alien "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal

7

order and his post-removal period detention." *Akinwale*, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)). More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly argue that there is no significant likelihood of removal.'" *Singh*, 945 F.3d at 1314 (quoting *Pelich v. Immigration & Naturalization Serv.*, 329 F.3d 1057, 1060 (9th Cir. 2003)); s*ee Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015)[5] ("Because Petitioner is responsible for thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future if he cooperates with DHS and voluntarily signs for the travel document."); *Oladokun v. U.S. Att'y Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) ("Oladokun fails to 'provide[ ] good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future,'" because his "non-cooperation is the only barrier to his removal." (quoting *Zadvydas,* 533 U.S. at 701).

---

[5] This Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when this Court finds them persuasive on a particular point. *See McNamara v. GEICO*, 30 F.4th 1055, 1060-61 (11th Cir. 2022); Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Here, the Federal Respondents have not shown that Petitioner's failure to sign was akin to a "refus[al] to make timely application in good faith for travel or other documents necessary" for his removal or that his failure to sign otherwise prevented his removal. 8 U.S.C. § 1231(a)(1)(C). The only document submitted by the Federal Respondents that Petitioner refused to sign is a notice to him about ICE's intention to remove him to Mexico, not an application for travel documents or forms that would otherwise appear to assist in his removal. (*See* Doc. 5-4).[6] While the Federal Respondents state that Petitioner's signature on the notice of removal is "required to begin the process of staging Petitioner for removal to Mexico," (Doc. 5 at 9), they fail to provide any support for that statement. In fact, there is no indication in the record that Petitioner has signed such a notice; thus, if his signature is required to begin the process of staging him for removal to Mexico, then it is even more unclear how ICE can contend "there is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future." (Doc. 5-1 at 3). Indeed, Cuba has refused to accept Petitioner and there is no indication that ICE has attempted to initiate Petitioner's removal to any other third country. Simply put, the Federal Respondents fail to support their position. Thus, the Court finds that the

---

[6] Even assuming there are additional forms that Petitioner refused to sign, the Federal Respondents do not explain the contents of those forms or how Petitioner's failure to sign such forms impeded his removal.

presumptively reasonable six-month period of detention expired prior to Petitioner filing the petition.

The Court also finds that Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner's order of removal became final in 2007, and ICE supervised him on an OSUP for years, while recognizing that there was no significant likelihood of his removal. (*See* Doc. 1 at 6-7; *see also* 5-1 at 2 (recognizing that as recent as February 2023, ICE affirmatively acknowledged that there was no significant likelihood of removal in the reasonably foreseeable future)). According to Petitioner, ICE re-detained him on November 3, 2025, without any changed circumstances. (*See* Doc. 1 at 6-7). He contends that despite being in custody for over six months, there is no evidence that ICE can remove him to Cuba or "that any other country has been willing to accept [him]." (*Id.* at 7). Petitioner has now been detained for approximately eight months, yet ICE still has been unable to remove him. Thus, the burden shifts to Respondents to "respond with evidence sufficient to rebut [Petitioner's] showing." *Akinwale*, 287 F.3d at 1052. As explained below, the Federal Respondents fail to do so.

The Federal Respondents do not argue that there is a significant likelihood of removal in the reasonably foreseeable future, and the deportation officer's unsupported statement that there is does not carry their burden. Petitioner has now been in ICE custody for approximately eight months—two

months longer than the presumptively reasonable period—with ICE being unable to remove him or otherwise provide any details on when or to where he will be removed. *See Zadvydas*, 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely . . . shrink[s].").

Thus, based on the evidence presented, the Court finds that the Federal Respondents have failed to show a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Therefore, Petitioner is entitled to release from detention under *Zadvydas*. However, Petitioner's release "shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3); *Zadvydas*, 533 U.S. at 699–700 (holding that when continued detention is unreasonable because removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release.").

Accordingly, it is **ORDERED**:

1. The **Clerk** shall update Petitioner's address to California City Immigration Processing Center, 22844 Virginia Boulevard, California City, CA 93505.

2. Given Petitioner's transfer to a detention facility in California, the Warden's motion to dismiss (Doc. 6) is **DENIED as moot**.

11

3. Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 1) is **GRANTED** as to his *Zadvydas* claim. Respondents shall release Petitioner, subject to supervision pursuant to 8 U.S.C. § 1231(a)(3), **within 24 hours** of this Order, and they shall provide Petitioner with access to a telephone to arrange transportation from the detention facility.

4. The Clerk is **DIRECTED** to enter judgment granting the petition, terminate any motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida on July 12, 2026.

_____
JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

c:
Sergio Riveron Cruz
Counsel of Record

12